## PETER AND BURGHARD STONE COMPANY ET AL. v. MARION NATIONAL BANK.

[No. 25,301. Filed October 5, 1926. Rehearing denied December 17, 1926.]

1. MECHANICS' LIENS.—*Contractor not entitled to lien where he has been paid full amount for completion of work.*—Where a contract for the construction of a building bound the contractor to complete it for a stipulated maximum price, and the court found that he had been paid that amount, he was not entitled to enforce a lien for any amount. p. 587.

2. MECHANICS' LIENS.—*Subcontractor not barred from taking, mechanic's lien where contractor merely, agreed to have all liens released or give bond to defend against them.*—A subcontractor is not barred from acquiring and foreclosing a lien by a stipulation in the contract between the contractor and owner that if any mechanics' liens were filed, the contractor would cause them to be released within twenty days or give a bond to defend against them. p. 587.

3. MECHANICS' LIENS.—*Subcontractor, when barred from taking, lien by stipulation in principal contract.*—A subcontractor who, with knowledge of a stipulation in the principal contract requiring the contractor to cause all mechanics' liens to be released, executed a contract that it would perform a certain part of the work and turn it over free from all liens for labor or materials and save harmless the contractor and owner from all liens growing out of the performance of its subcontract, thereby waived the right to enforce a lien against the property, notwithstanding a provision in a form of contract attached thereto and made a part thereof that the contract would not be binding on it under certain circumstances unless it would be entitled to a lien. p. 587.

4. APPEAL.—*Exception to the overruling of motion to make special finding, more specific presents no question.*—A motion to make a special finding more specific is not recognized by the practice in this state, and an exception to the overruling of such a motion presents no question on appeal. p. 588.

5. APPEAL.—Only those objections to the competency or admissibility of evidence that were made in the trial court will be considered on appeal. p. 589.

6. WITNESSES.—*Architect who drew plans for building and was present at negotiations leading up to contract for construction not agent of owner within meaning of statute.*—An architect who had prepared plans for a building and was employed by the owner to supervise its construction who was present during

negotiations between the owner and the contractor leading up to the contract, but who did not negotiate nor execute the contract, was not an agent of the owner within the meaning of §553 Burns 1926 so as to preclude his testifying after the death of the contractor as to what was said during such negotiations. p. 589.

From Howard Circuit Court; *William C. Overton,* Judge.

Action by the Peter and Burghard Stone Company against Henry W. Klausmann and the Marion National Bank of Marion to foreclose a mechanic's lien. It was consolidated with an action by said Klausmann against said bank, in which the plaintiff in the first action and others were made parties defendant. On the death of Klausmann, his widow, Jessie B. Klausmann, as administratrix of his estate, was substituted. From a judgment in favor of the bank as against the administratrix and the stone company, and a personal judgment for the stone company against the administratrix, but denying its lien, the administratrix and the plaintiff in the original action appeal. (Transferred from the Appellate Court under §1357, cl. 2, Burns 1926). *Affirmed.*

*Fenton, Steers, Herbst & Klee, Cassius C. Shirley, Don P. Strode, Bell, Kirkpatrick & McClure* and *Walker & Hollett,* for appellants.

*Gus S. Condo, John R. Browne* and *Wolf & Barnes,* for appellees.

PER CURIAM.—The appellant stone company sued Henry W. Klausmann and the appellee bank, seeking to recover a personal judgment against Klausmann and to foreclose a mechanic's lien on appellee's building for certain marble work done in its construction and erection under a subcontract with Klausmann, to whom appellee had let the principal contract for erecting it. After the issues were made up, the action was consolidated with another action brought by Klausmann, seek-

ing to recover a judgment against appellee for a balance alleged to be due him on his general contract for the construction and erection of the same building, and to foreclose a mechanic's lien thereon, in which the stone company and other subcontractors were made parties to answer to their interests. The order of consolidation provided that the actions be consolidated for all purposes, and that the stone company thereafter be known as a cross-complainant, and that all its pleadings be designated accordingly. Thereafter, Henry W. Klausmann died, and after having been appointed and qualified as administratrix of his estate, his widow was substituted in his place, and is one of the appellants herein.

The consolidated cause was tried by the court, who found the facts specially and stated conclusions of law thereon in favor of appellee, to the effect that neither Klausmann's estate nor the stone company was entitled to recover anything as against appellee, and that the mechanic's liens filed by each of them against appellee's building were void, but that the appellant stone company was entitled to recover a personal judgment against the administratrix of Klausmann's estate for $6,807.96, with interest. Judgment was rendered in conformity with the conclusions of law. Each appellant has assigned as error that the trial court erred in each of its conclusions of law upon the facts found, and the administratrix of the estate of Klausmann has also assigned as error the overruling of her motions to make the special finding of facts more specific, for a *venire de novo* and for a new trial, respectively.

The special finding states that on May 1, 1916, and for a long time before, appellee was and still is the owner of the real estate here involved, on which its bank building was erected. That appellee caused plans and specifications to be prepared by an architect for the

erection and construction of a seven story, steel frame bank building thereon, and received bids, but found them all too high. That it then conferred with Henry W. Klausmann and others, and it and they orally agreed that certain changes, forty-four in number, should be made in the plans and specifications, reducing the number of stories in the building to six, substituting reinforced concrete for steel in certain portions, and making other changes by which the cost was reduced. That after these changes in the original plans and specifications had been orally agreed upon, Klausmann and appellee entered into a written agreement which recited that Klausmann was to erect "a new bank building" for appellee for a price named, and that "before entering into a formal contract the parties desire that the architect shall prepare suitable plans and specifications that were orally agreed upon," but that "Klausmann shall proceed with the preliminary work looking to the construction of the building," and "as soon as the amended plans and specifications have been prepared a formal contract covering the execution of the work shall be promptly entered into by the parties." That thereafter the architect prepared new plans and specifications, which embraced the changes orally agreed upon, and pursuant to the terms of the oral agreement and the preliminary written agreement, Klausmann and appellee, on May 26, 1916, executed a contract in writing, by which Klausmann agreed to furnish all materials and labor, and to complete the building "according to the plans and specifications now on file in the office of D. A. Bohlen & Son, Architects," in consideration of which, appellee agreed to pay him the sum of $208,130 (being slightly more than the price fixed by the preliminary agreement). And the contract further provided that: "It is distinctly understood that the said H. W. Klausmann will do the work on a guaranteed

price of $208,130, but he will do the work complete on a basis of cost plus five per cent. The five per cent. and the cost of the building is not to exceed the sum of $208,130. In case that the cost of the building, plus the five per cent., is less than the sum of $208,130 the said H. W. Klausmann is to allow (appellee) the difference between the actual cost of the building, plus five per cent., and the sum of $208,130, mentioned as a guaranteed price. * * * In the event of the taking of mechanic's liens upon the premises for any part of the work hereby contracted for, second party shall cause same to be discharged and fully released within twenty days after record of the same, unless they shall within such time furnish the owner with affidavit showing that there is, in the contractor's opinion, a good defense thereto,. and shall tender bond with sufficient surety conditioned for the defense of said lien," etc. That, by reference, this contract made the new plans and specifications a part of it, and they contained provisions as follows: "Should any modifications in the plans and specifications or additions thereto be deemed advisable during the construction of the building, the architects will require of the contractor an estimate of the amount to be deducted from the contract sum or added thereto for said change or addition, and the contractor must obtain from the architects a written order authorizing said change before proceeding further. In the absence of such written orders, it will be assumed that the contractor has been fully compensated by other work omitted and he will be entitled to no extra moneys therefor. * * * If at any time, when a payment under the contract shall fall due, there shall be on record a mechanic's lien attaching the premises, the architects will withhold their certificate and no payment will be made until such mechanic's lien has been satisfied and canceled in so far as it affects these premises."

That after the execution of this written contract, on August 9, 1916, the appellant stone company, as subcontractor, entered into a written contract with said H. W. Klausmann, binding it to furnish the material and labor and do "all marble work" in the bank building for a price named, which contract contained a provision as follows: "XI. The said subcontractor hereby agrees to turn said work over to the contractor in good condition and free from all claims, encumbrances and liens for labor or materials, and to protect and save harmless the contractor and owners from all claims, encumbrances and liens growing out of the performance of this contract. * * * It is understood that the form of proposal adopted by the National Association of Marble Dealers shall become part of this contract, copy of which is herewith attached, covering items Nos. 1 to 6 inclusive." And that the copy so attached contained a stipulation as follows: "18th. This contract shall not be binding upon the subcontractor until it is clearly established by the owner and the contractor that in the event of failure on the part of the contractor to make payments, when due, the right of the subcontractor to lien the building will be unimpaired, or until the contractor shall have furnished adequate guarantees for the payment of all amounts as they shall fall due under this contract, said guaranties to be in form and substance satisfactory to the subcontractor." And the court further found that the appellant stone company had earned under its said contract $6,807.96 which remained unpaid, and had duly given a proper notice, within the time allowed, of its intention to hold a lien on said real estate for that amount, and had employed an attorney to foreclose its lien, who had rendered services therein of the value of $1,500. Also that appellee had paid to Klausmann, or for his account, more than the full maximum price fixed by his contract for the

construction of the building ($208,130), together with the cost of all extras that were ordered in writing ($9,549.79) and five per cent. profit on the extras ($477.49), but that he had duly given notice, within the time allowed by law, of his intention to hold a lien for a balance which he claimed to be due him, and had employed attorneys to foreclose the lien, who had rendered services of the value of $3,500.

The principal contract under which Klausmann erected the building, as set out above, bound him to complete it for the maximum price of not more than

1. $208,130, plus the cost of such changes as should be ordered in writing and five per cent. thereof, and from the finding that he had been paid those amounts in full, the conclusion necessarily followed that he was not entitled to hold a lien for any balance. Therefore we need not consider the effect on his right to a lien of his contract to procure the release of all liens that might be filed.

The appellant stone company is correct in its contention that, as a subcontractor, it was not barred from acquiring and foreclosing a lien by the stipula-

2, 3. tion in the principal contract that if any mechanics' liens were taken, the contractor should cause them to be released within twenty days, or should give a bond to defend against them. *Kokomo, etc., Traction Co.* v. *Kokomo Trust Co.* (1923), 193 Ind. 219, 225, 137 N. E. 763. But when, with knowledge of such a stipulation in the principal contract, it entered into a subcontract expressly agreeing to turn the work over free from all liens for labor or materials, and to protect and save harmless the contractor and owners from all liens growing out of the performance of its subcontract, it thereby waived all right to enforce a lien against the property for labor and materials. *Carson, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 357, 360,

105 N. E. 503; *Baldwin, etc., Works* v. *Edward Hines Lumber Co.* (1919), 189 Ind. 189, 199, 125 N. E. 400, 127 N. E. 275, 13 L. R. A. 1059. Neither did the provision in the form of marble contract, attached to and made a part of the subcontract, that it should not be binding on the subcontractor until he should either receive satisfactory guaranties of payment or until it should be established that the subcontractor could "lien the building," to operate to preserve the subcontractor's right to enforce a mechanic's lien, as against its express agreement not to do so, set out above. Being in the alternative, that provision had reference to circumstances under which the subcontractor should not be bound—that is, circumstances under which it need not perform. And, so far as appears from the special finding, the subcontractor may have received guaranties of payment with which it was fully satisfied, in consideration of which, it elected to be bound by and to perform its subcontract just as it was written. The trial court did not err in its conclusion of law that neither appellant was entitled to enforce a lien.

An exception to the overruling of a motion to make the special finding more specific presents no question for consideration on appeal. *Delaney* v. *Gubbins* 4.    (1914), 181 Ind. 188, 195, 104 N. E. 13; *McCleery* v. *Zintsmaster* (1916), 187 Ind. 37, 47, 114 N. E. 625.

The appellant administratrix has failed to point out in her brief the alleged defects, uncertainties and ambiguities in the special finding on which her motion for a *venire de novo* purports to be grounded, and without assistance from any source, we fail to perceive that it lacks anything necessary to its sufficiency as the basis of a judgment in favor of appellee, the defendant below.

Her motion for a new trial challenges the competency as a witness on behalf of the defendant of an architect

who prepared the plans and superintended the construction of the building, by reason of the contractor on whose behalf the action was prosecuted having died before the trial. Her brief but meagerly sets out the evidence, and does not disclose what, if any, grounds of objection to the evidence of the architect were stated at the time it was admitted, and, under the rule that a party, on appeal, will not be heard to urge any objections to the competency or admissibility of evidence except objections which were made and overruled in the trial court, we should be justified in ignoring this specification. *Baltimore, etc., R. Co.* v. *Sliger* (1923), 194 Ind. 442, 448, 141 N. E. 467; *Wheat* v. *State* (1925), 195 Ind. 660, 664, 146 N. E. 581. The statute on which she relies provides that: "No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died shall be a competent witness in any suit upon or involving such contract as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract, against the legal representatives or heirs of the decedent, unless he shall be called by such heirs or legal representatives. And, in such case, he shall be a competent witness only as to matters concerning which he is interrogated by such heirs or representatives." §553 Burns 1926, §500 R. S. 1881. But, so far as the evidence set out in the briefs discloses, the testimony complained of did not relate to a contract in the making of which the architect acted as an agent. It seems to have related only to the preliminary negotiations concerning proposed changes in the original plans and specifications on which bids were received that were all rejected; which negotiations led up to the making of a new contract based upon new plans, after the rejection of all bids upon the original plans, as being too high. And the undisputed evidence,

as set out in the briefs, is that all the negotiations which led up to the oral agreement then reached were had directly between a "building committee" of the board of directors of the bank, headed by its president, Mr. McCullough, on the part of appellee, and the contractor, Mr. Klausmann, in person. And the architect who testified is not shown to have taken any part whatever in negotiating that contract, but only to have attended the conference and received from the president of the bank, in the presence of the contractor, directions as to what changes he should make in the plans and specifications so as to cheapen the cost of construction. And he did not sign either the preliminary memorandum of a contract or the contract as finally drawn, in any capacity whatever. A servant or agent who was present during the negotiations between his employer and another which led up to a contract between them that he neither negotiated nor executed on behalf of either party did not act as an agent in the making of the contract within the meaning of the statute. *Piper, Exr.,* v. *Fosher* (1890), 121 Ind. 407, 412, 23 N. E. 269.

The judgment is affirmed.