OLESKA, ADMINISTRATOR *v.* KOTUR.

[No. 17,070. Filed April 30, 1943. Rehearing denied May 28, 1943.]

430

432

*Stiles & Reynolds,* of Gary, for appellant.

*Hodges, Ridgely & Davis,* of Gary, for appellee.

CRUMPACKER, J.—This is a contest between the parties hereto over the proceeds of a policy of insurance on the life of one Kata Vukovich issued by the Western and Southern Life Insurance Company of Cincinnati, Ohio, in the sum of $500.00 with a provision for additional indemnity in the event of accidental death. The policy was made payable to the executors or administrators of the insured's estate unless paid under the "facility of payment" clause as set out therein. Kata Vukovich met accidental death on November 22, 1939, whereupon the appellee claimed the proceeds of said insurance policy as the assignee thereof. In the meantime John Oleska, the appellant herein, was duly appointed administrator of the estate of Kata Vukovich and demanded of the insurer that such proceeds be paid to him as such administrator and beneficiary named in the policy. On February 19, 1940, the appel-

lee filed suit on her alleged claim and named the appellant and said Western and Southern Life Insurance Company as defendants thereto. The insurance company, by way of interpleader, admitted full liability upon its policy and paid the proceeds thereof to the clerk of the Lake Superior Court for the use and benefit of such claimant as said court should ultimately determine to be entitled thereto. Upon this interpleader the insurance company was discharged and issues were joined between the appellant and appellee, each claiming to be the owner of said insurance money. A trial was had to the court which found the facts specially, stated conclusions of law thereon favorable to the appellee and, over appellant's motion for a new trial, entered judgment accordingly. The errors relied upon for reversal and assigned to this court for review are: (1) The trial court erred in each of its conclusions of law on the facts found; and (2) the trial court erred in overruling appellant's motion for a new trial.

The complaint upon which the cause was tried was in three paragraphs. To the first paragraph thereof the appellant filed answer in twelve paragraphs and to the second and third paragraphs of said complaint the appellant addressed separate answers in eight paragraphs each. The appellant also filed a cross-complaint seeking to be declared the owner of the money in controversy, which the appellee answered in two paragraphs. Appropriate replies were filed by the respective parties to all paragraphs of answer to both the complaint and cross-complaint. There being no questions raised as to the sufficiency of any of these pleadings, a resume of their contents and purposes will meet the requirements of this appeal. There is very little difference between the first and third paragraphs of

the complaint. Both proceed upon the theory that an assignment of the insurance policy in controversy from Kata Vukovich to the appellee resulted from their words and acts in relation thereto. The first paragraph pleads a purported written assignment which is omitted in the third paragraph. The second paragraph of complaint asks the reformation of an imperfect written instrument in such manner that it may constitute an assignment of all property rights in said insurance policy from the insured to the appellee. In answer the appellant first denies the execution of the alleged assignment, either in writing or by words and conduct, and second, attacks the validity thereof because (a) it is in violation of the terms of the policy, (b) the appellee had no insurable interest in the life of the insured, (c) it lacks consideration, (d) it constitutes a wager on the life of the insured, and (e) the insured lacked mental capacity to make a valid contract. By his cross-complaint the appellant seeks recovery of the proceeds of the policy on the theory that he is the beneficiary thereof and that the insurer, having failed to elect to pay the same to anyone else under the "facility of payment" clause, said proceeds must be paid to him. This cross-complaint is met by a general denial and a special answer pleading the alleged assignment upon which the appellee counts in her complaint.

The following, in substance, are the facts as found specially by the trial court. Prior to September 17, 1934, Kata Vukovich applied to the Western and Southern Life Insurance Company of Cincinnati, Ohio, for a policy of insurance on her life in the sum of $500.00. Such policy was issued on said 17th day of September, 1934, and shortly thereafter delivered to the said Kata Vukovich whereby her life was insured

in the sum of $500.00, with certain additional sums for accidental death, in consideration of a weekly premium of thirty-five cents. The administrator of the insured's estate is designated as the beneficiary thereof except that "The Company may make payment or allow any benefit provided for in this policy to any relative by blood or connection by marriage of the Insured, or to any person appearing to the Company to be equitably entitled thereto." Said policy further provided that "any assignment or pledge of any benefits hereunder shall be void and of no effect." The said Kata Vukovich maintained said policy in force until September or October, 1934, when she assigned and delivered the same to the appellee who thereupon informed the manager of the insurance company's Gary office, through which said policy had been issued, of such assignment and conferred with him as to the effect thereof with special reference to whether she would receive the proceeds of the insurance if she continued paying the premiums thereon. She was told by said manager that if she did so until Kata Vukovich died and then had the policy in her possession she would be paid the proceeds thereof. Relying upon such representations by the company's local manager and without any intention of thereby wagering upon the life of Kata Vukovich, the appellee paid all premiums thereafter due on said policy until the insured died in November, 1939, at which time she had said policy in her possession and in good faith claimed to be the owner thereof. At all times after she assigned her said life insurance to the appellee and until she died, the said Kata Vukovich knew the appellee was paying the premiums thereon under the belief of ownership and permitted her to do so without protest or dispute. Upon the death of Kata Vukovich $799.40 became due on said policy and the insurer

made no specific election under the "facility of payment" clause but paid the same to the clerk of the Lake Superior Court for the use and benefit of those to whom said court should determine it belonged. At the time said policy of life insurance was issued to her and at the time she assigned it to the appellee the said Kata Vukovich was of sound mind.

Upon these facts the trial court concluded in substance that (1) the law is with the appellee, (2) the assignment of the policy is valid and transferred all property rights therein to the appellee, (3) the statement of the insurer's local manager to the effect that if the appellee paid all future premiums when due and had the policy in her possession upon the death of the insured the proceeds thereof would be paid to her, constituted an election under the "facility of payment" clause, and (4) the knowledge of the insured that the appellee was paying the premiums on said policy, which she permitted without protest or dispute of ownership over a period of years, now estops her administrator from claiming any interest therein.

The appellant contends that the assignment upon which the appellee rests her case, and which the trial court concluded was valid, is shown by the facts, as found by the court, to be void as a matter of law. He says this is true because (1) the said assignment is contrary to an express provision in the policy itself, (2) the appellee had no insurable interest in the life of the insured, (3) there was no consideration for such purported assignment, and (4) it constituted a mere wagering contract and therefore is void as against public policy.

As heretofore stated one of the facts found by the court is that the insurance policy involved in this controversy contained the following clause: "any assign-

ment or pledge of any benefits hereunder shall be void and of no effect." This provision the appellant contends renders the assignment upon which the appellee recovered below absolutely void. In support thereof we are referred to the cases of the *Prudential Ins. Co. v. Ritchey* (1919), 188 Ind. 157, 119 N. E. 369, 484; *Stewart v. Gwynn* (1908), 41 Ind. App. 320, 82 N. E. 1000, 83 N. E. 753; and *American Ins. Co. of Chicago v. Gallagher* (1875), 50 Ind. 209. In the first of the above cases Ritchey, as the assignee of an insurance policy, brought suit to recover its proceeds against the insurer. The policy involved contained a provision that an assignment thereof voided the entire contract of insurance and in construing that clause the court said, "Under the provisions of the policy referred to the company had a right to treat the policy as void and to refuse payment on that ground unless facts existed which estopped it from asserting that right or which amounted to a waiver of such right by the company." This falls short of a holding that an assignment in the face of a contractual provision to the contrary is absolutely void, but rather indicates to us that such an assignment is voidable at the option of the insurer unless his conduct estops or waives the exercise thereof. In *Stewart v. Gwynn, supra,* there was no assignment involved. The action was in replevin by the beneficiary named in the policy to recover possession thereof from a third person. The court held that where there had been no change in beneficiary and no assignment of the policy to such third person, the alleged beneficiary named therein had a *prima facie* right to its possession. This case, however, is of benefit to us to the extent that it holds that an insurance policy in which the insured's administrator is named as the beneficiary, is a mere chose in action and may be transferred by de-

livery without a written assignment. In the Gallagher case the insurer defended suit on one of its insurance policies on the ground that the assignment thereof was contrary to the provisions of the policy itself as well as the terms of its charter and by-laws which were a part of the policy by reference. In this the company was upheld. As the insurer is not a party to the instant case and, as far as the record discloses, has never attempted or sought to void the assignment in controversy, the authorities above cited and upon which the appellant relies lend little support to his contention that said assignment was absolutely void and that the contractual provision against it was made for his benefit as well as that of the insurer.

Provisions in a life insurance policy calling for forfeiture in case of assignment, or declaring such assignment void, have been generally recognized as valid unless in conflict with a statute making such policy assignable. Therefore, unless sanctioned by statute, the insured is precluded from making a valid assignment except in the event the insurer, notwithstanding the inhibition, treats or recognizes the policy as assignable. Such stipulations, however, are available only to the insurer except where the vested rights of a designated beneficiary intervene. Obviously there can be no such intervention where the insured's administrator is named as beneficiary until the policy matures through the death of the insured, as until then there is no being in existence in whom an interest can vest.

The case of *Abbruzise* v. *Sposata et al.* (1940), 306 Mass. 151, 27 N. E. (2d) 722, is strikingly similar to the case at bar. The policy involved named no specific beneficiary and contained a provision that "any assignment or pledge of this Policy or

of any of the benefits thereunder shall be void and of no effect." The insured assigned the policy during his lifetime and his executor, upon his death, brought suit against the assignee and the insurance company to establish ownership in the policy and for a decree ordering the insurer to pay the proceeds thereof to him. The insurance company acknowledged its liability and its willingness to pay the proceeds in such manner as the court might direct. Under such circumstances, the court held that the provision of the policy against assignment or pledge ran to the sole benefit of the insurance company. As it did not insist on its rights, as evidenced by its willingness to pay the proceeds of the policy in accordance with the court's decree, the assignment excluded the insured's executor from any interest therein. In *Goldman* v. *Moses et al.* (1934), 287 Mass. 393, 191 N. E. 873, the court said, "In dealing with the validity of an assignment as such, it has been held that formal requisites of assignments, set forth in the policy, are intended for the benefit of the company and may be waived by it." Although factually that case is not similar to the one before us, application of the principle of law announced was necessary to the solution of the question in hand and what the court said in reference thereto is not dictum. To the same effect is *Penn Mutual Life Insurance Co.* v. *Hunt* (1921), 237 Mass. 241, 129 N. E. 391; *Farmers State Bank* v. *Kelley* (1923), 155 Ga. 733, 118 S. E. 197; 37 C. J. 431; and cases therein cited. It is true that these decisions are not binding on us but their authority is highly respectable and persuasive and do no violence to any pertinent holding of our own courts. In our opinion therefore the provision against assignment in the insurance policy in controversy inured to the sole benefit of the insurer who elected to waive it by paying

the proceeds into court subject to a decree determining ownership thereof. The question of the validity of the assignment before us, as being contrary to an express provision of the insurance contract, is not open to the appellant and the conclusion of the trial court in that respect is not erroneous.

But even so the appellant says such assignment contravenes § 39-704, Burns' 1940 Replacement, § 9958, Baldwin's 1934. The statute referred to reads as follows: "No person entitled to receive benefits under a life insurance or life annuity contract, or under a written agreement supplemental thereto, issued by a domestic life insurance company, shall be permitted to commute, anticipate, encumber, alienate, or assign such benefits, if the right to do so is expressly prohibited or withheld by a provision contained in such contract or supplemental agreement. And, if such contract, policy or supplemental agreement so provides, such benefits, except when payable to the person who provided the consideration for such contract, shall not be subject to such persons' debts, contracts, or engagements, nor to any judicial process to levy upon or attach the same for payment thereof." This is § 1, ch. 20 of the Acts of 1931, the title of which reads as follows: "An act entitled an act concerning provisions contained in life insurance and life annuity contracts, or in agreements supplemental thereto, which withhold from persons entitled to benefits under such contracts or agreements the right to commute, anticipate, encumber, alienate or assign such benefits and/or which exempt such benefits from the debts, contracts, or engagements of such persons and from any judicial process for payment thereof." The scope of this act is limited to its title which indicates that it has no reference or applicability to any policy of life insur-

ance except those containing provisions for annuities or benefits of a kindred nature and was aimed to prevent an insured creating a fund, with his own money and for his own benefit, that his creditors or other obligees cannot reach. If such a policy is issued for the benefit of a third person the benefits thereby created are beyond the reach of the beneficiary's creditors. If it is issued for the benefit of the insured and he pays for it, the fund thereby created is subject to his debts. In either event the contract cannot be assigned if it so states. This statute has no place in the case at bar as the policy here involved is not within its purview.

It is next urged that the assignment in question, being to a third person who had no insurable interest in the life of the assignee, was invalid. Section 39-4210, Burns' 1940 Replacement, § 9504-10, Baldwin's Supp. 1936, provides as follows: "Any person whose life is insured by any life insurance company may name as his payee or beneficiary any person or persons, natural or artificial, with or without an insurable interest, or his estate." This statute was in full force and effect at the time the policy in suit was assigned to the appellee and it would seem to follow naturally that, if one can name a person who has no insurable interest in his life as the beneficiary of his life insurance, he can assign the same to such a person. However, in the absence of the foregoing statute, our courts have sanctioned the rule, approved by the great weight of authority elsewhere, that bona fide assignments to persons having no insurable interest in the life of the insured are valid. *Amick* v. *Butler, Administrator* (1887), 111 Ind. 578, 12 N. E. 518; *Davis* v. *Brown* (1903), 159 Ind. 644, 65 N. E. 908; *Nye* v. *Grand Lodge A. O. U. W. of Ind.* (1894), 9 Ind. App. 131, 36 N. E. 429; *Franklin Life Insurance Co.* v.

*Sefton, Adm'r.* (1876), 53 Ind. 380. In *Amick* v. *Butler, supra,* the Supreme Court, through Mitchell, J., said, "It has never been seriously questioned but that a person may insure his own life, and by the terms of the policy appoint another to receive the money, upon the death of the person whose life is insured; or, having taken a policy, valid in its inception, that he may in good faith assign his interest in such policy, as in any other chose in action." This statement of the law finds full support in all the decisions of our courts except in those cases turning upon the fact that the transaction was colorable and merely a scheme to obtain speculative insurance.

It is undisputed that the assignment upon which the appellee rests her case is without consideration. We have frequently held that a policy of life insurance payable to the administrator of the insured's estate and upon which the insured pays the premiums, is wholly and absolutely his property. It is a chose in action with which he can do as he pleases in the absence of prohibitory legislation or contract stipulations. *Brown* v. *Farmers' State Bank* (1919), 70 Ind. App. 182, 123 N. E. 224; *Hay, Admr.* v. *Billeter* (1925), 83 Ind. App. 244, 148 N. E. 159; *Prudential Insurance Company of America* v. *Young* (1896), 14 Ind. App. 560, 43 N. E. 253.

This being so the fact that there was no consideration between the parties was a matter of no consequence. The policy had the characteristics of personal property, and it was clearly within the power of the insured to give it to the appellee if she saw fit. In *McNevins* v. *Prudential Ins. Co.* (1908), 108 N. Y. Supp. 745, 57 N. Y. M. 608, McNevins took out a policy on his life and handed it to his wife, saying: "Take this policy and pay on it," which she

did up to the time of his death. The court held that the policy could be transferred the same as any other personal property, and that as a gift, the transfer required no consideration. The appellant insists, however, that the present action is not brought on the theory that said insurance policy was given to the appellee but rather that she bought it for a valuable consideration. We cannot accept this theory of the appellee's complaint. In each paragraph thereof we find allegations to the effect that the insured told the appellee that she wanted her to have the insurance policy on her life; that she loved the appellee and that she wanted her to keep up the premiums and have the proceeds of the policy when she (the insured) died. Nowhere is it alleged that the insured assigned said policy to the appellee for a valuable consideration. We think the complaint clearly proceeds upon the theory that the assignment of the policy in controversy was a gift thereof.

With reference to appellant's contention that the entire transaction under review was a wagering contract, contrary to public policy and therefore void, it is sufficient to say the fact that the assignment involved was made without consideration to a person who had no insurable interest in the assignor and who paid all future premiums on the policy, does not make it so. Those are circumstances very pertinent to the issue but, standing alone, they are not controlling. In addition thereto it must appear that such a situation was brought about with an intention to speculate on the chances of human life and that the whole procedure was a scheme to avoid the law against wagering contracts. In the case of *Lincoln National Life Ins. Co.* v. *Sobel* (1942), 110 Ind. App. 331, 35 N. E. (2d) 121, this court quoted with approval

the following language of the Supreme Court of Oregon: " '. . . where one takes out a policy upon his own life as an honest and bona fide transaction, and the amount insured is made payable to a person having no interest in the life, or where such a policy is assigned to one having no interest in the life, the beneficiary in the one case and the assignee in the other may hold and enforce the policy if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming, and wagering policies.' " *Lyman* v. *Jacobsen* (1929), 128 Ore. 567, 275 P. 612, 615, 73 A. L. R. 1028. In the instant case no one questions the insurer's good faith in insuring her own life. Whether the assignment thereof was a contrivance to avoid the law against wagers was a question of fact for the trial court to determine. It did so and, as there is substantial evidence to support its finding, that ends this feature of the case as far as we can be concerned with it. The mental capacity of the insured to make such assignment was also a question exclusively for the trial court to determine and for the same reason we are powerless to disturb its finding in that regard.

Having concluded the assignment to be valid, the question of whether or not the insured's conduct in reference thereto estops her administrator from now contesting its validity becomes unimportant and we see no necessity for its decision.

This brings us to a consideration of the appellant's motion for a new trial. Most of the questions raised thereby are separately assigned as error and ▋ what we have heretofore said disposes of them. All that remains for our attention are questions concerning the admissibility of certain evidence by means of which the appellee established her case. It

appears that prior to trial the conditional examination of the appellee was taken at the appellant's instance who now contends that its introduction in evidence was wholly at his option; that he did not see fit to use it and its use by the appellee over his objection was error. Whatever the force of such objection may be it goes only to the contents of the instrument. The record discloses that such conditional examination was offered and admitted in evidence for the sole purpose of establishing the fact that it had been taken at the instance of the appellant and that, as a matter of law, he thereby waived any objection he might have otherwise had to the competency of the appellee as a witness. It is presumed that the scope of the court's consideration of the document was limited to the purposes for which it was admitted. In any event its introduction in evidence was harmless as the appellee testified in person to the same matters and if the court erred in reference thereto it was in holding the appellee to be a competent witness in her own behalf.

Section 2-1715, Burns' 1933, § 304, Baldwin's 1934, provides as follows: "In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate."

The plain purpose of this statute is to prevent the living from taking advantage of the dead but it is well settled in Indiana, and in other states having similar statutes, that the protection it provides is waived when

an adverse party is called as a witness in behalf of the decedent's estate and thereafter such person becomes a competent witness for all purposes pertinent to the issues in litigation. *Young* v. *Montgomery* (1903), 161 Ind. 68, 67 N. E. 684; *Pittsburgh, etc., R. Co.* v. *O'Conner* (1909), 171 Ind. 686, 85 N. E. 969; *Gilbert* v. *Estate of Swain* (1894), 9 Ind. App. 88, 36 N. E. 374; Jones Commentaries on Evidence, Vol. 5, p. 4426. The appellant, however, insists that he did not call the appellee as a witness at the trial but merely examined her under oath prior thereto; that such examination was not introduced in evidence by him and therefore her statutory incompetency was not waived. The value of the conditional examination of parties is well known and recognized by the legal profession. In the instant case death has denied it to the appellee while it was available to the appellants with all its attendant advantages. It seems to us that the construction of the statute under consideration for which the appellant contends would augment its purpose by permitting the dead to take advantage of the living and thereby take one edge off the sword. *Craig* v. *Norwood* (1916), 61 Ind. App. 104, 117, 108 N. E. 395, was a suit by an administrator to recover personal property belonging to his decedent's estate. The competency of the adverse party to testify was raised and this court said, "It also appears that he was called as a witness in the first suit by plaintiff, and was compelled to answer the interrogatories under oath presented by the plaintiff, so that his incompetency to testify as to the same matters in this case must be held to have been waived." In point of view of its competency, we see no logical distinction between testimony given at a former trial of the same cause and the conditional examination of a

party taken prior to the trial of a cause for the first time.

One George Kovich, an agent for the Western and Southern Life Insurance Company, through whom the policy in controversy was written, was permitted to testify for the appellee at the trial of this cause. This the appellant contends was in contravention of § 2-1717, Burns' 1933, § 306, Baldwin's 1934, which, among other things, provides that "No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died shall be a competent witness in any suit upon or involving such contract as to matters occurring prior to the death of such decedent, on behalf of the principle to such contract, against the legal representatives or heirs of the decedent, unless he shall be called by such heirs or legal representatives." This statute has been held to apply to only such agents as represent parties adverse to the estate and has no reference to one whose principal is making no claim against the same. *Foster, Adm.* v. *Honan* (1899), 22 Ind. App. 252, 53 N. E. 667; *Scrogin* v. *Dickinson* (1914), 57 Ind. App. 353, 107 N. E. 86; *Peter, etc., Stone Co.* v. *Marion Nat. Bank* (1926), 198 Ind. 581, 153 N. E. 472. As Kovich's principal, Western and Southern Insurance Company, is making no claim against the appellant, his testimony was incompetent only in the event he was also the agent of the appellee in the matters concerning which he testified. The trial court's special finding of facts is silent in that regard and it must therefore be assumed by us that such was not the case. The burden was on the appellant to show such agency and the failure of the court to find the facts in that regard must be treated as the equivalent of an express finding against him. *City of Michigan City* v. *State ex*

*rel. Seidler* (1937), 211 Ind. 586, 5 N. E. (2d) 968; *Deming Hotel Co.* v. *Sisson* (1940), 216 Ind. 587, 24 N. E. (2d) 912; *McClellan* v. *Tobin* (1942), 219 Ind. 563, 39 N. E. (2d) 772; *Satterblom* v. *Wasson* (1942), 111 Ind. App. 377, 41 N. E. (2d) 674.

Having considered all questions upon which a reversal is sought and finding no error, judgment is affirmed.

NOTE.—Reported in 48 N. E. (2d) 88.