231 F.2d 833
 Joseph J. DULING and Charles C. Scott, Executors of the Last Will and Testament of Jack Marks, Deceased, Plaintiffs-Appellants,
v.
Louis R. MARKUN and Maple Road Village, Inc., Defendants-Appellees.
 No. 11512.
 United States Court of Appeals Seventh Circuit.
 April 11, 1956.
 Rehearing Denied May 1, 1956.
 
 John A. Alexander, Donald A. Schabel, Indianapolis, Ind., James M. Guiher, Clarksburg, W. Va., Buschmann, Krieg, DeVault & Alexander, Indianapolis, Ind., Steptoe & Johnson, Clarksburg, W. Va., of counsel, for appellants.
 Robert Hollowell, Gustav H. Dongus, Michael L. Fansler, Michael D. Fansler, Indianapolis, Ind., for appellees, Fansler, Fauvre, Dongus & Chambers, Indianapolis, Ind., of counsel.
 Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.
 DUFFY, Chief Judge.
 
 
 1
 Plaintiffs brought this action as the executors of the will of Jack Marks, deceased, alleging defendants were indebted to the Marks Estate in the sum of $44,404.91 and interest. The claim was based upon two checks of $25,000 each, executed by Marks and delivered by him to defendant Markun in August, 1950 and November, 1950, respectively.
 
 
 2
 The complaint herein was filed on March 11, 1954, and, together with the summons, was served on defendants on March 16, 1954. A notice of appearance by defendants was filed on March 30, 1954. Thereafter occurred a pattern of flagrant disregard of Federal Rules of Civil Procedure, 28 U.S.C.A., insofar as the dates for filing pleadings are concerned. Although answer or other responsive pleading by defendants should have been filed by April 5, 1954, defendants did nothing until after June 7, 1954, on which date plaintiffs requested the clerk of the District Court to enter a default pursuant to Rule 55(a), Federal Rules of Civil Procedure. Just why the clerk did not enter a default does not appear from the record. Nine days thereafter on June 16, 1954, defendants moved for an extension of time to June 28, 1954 in order to answer the complaint. The application made no showing of "excusable neglect", but the motion was granted ex parte the following day. Thereafter, plaintiffs moved to vacate the order entered on June 17, 1954, but the motion was denied. On June 25, 1954 plaintiffs moved for a default judgment to be entered by the Court pursuant to Rule 55(b) (2) on the ground defendants had failed to answer or otherwise defend within the time prescribed by Rule 12(a), Federal Rules of Civil Procedure. This motion was denied.
 
 
 3
 On June 11, 1954 notice was served on the attorney who had appeared for defendants, that the deposition of defendant Markun would be taken on June 23, 1954. A subpoena was served on Markun to appear at a designated time and place. The day before the deposition was to be taken the attorney for defendant requested, by telephone, that the deposition be postponed, representing that defendant Markun was suffering from a bad case of poison ivy. The request for a postponement was refused because the principal counsel for plaintiffs was, at that time, en route from Clarksburg, West Virginia to Indianapolis. Neither defendant nor his attorney appeared pursuant to the notice and subpoena, and when inquiry was made at the office of defendant's attorney, the latter's secretary read what purported to be a doctor's certificate to the effect that defendant Markun was confined to bed because of heat exhaustion. On June 25, 1954, because of defendant's failure to appear for examination, plaintiffs moved for default pursuant to Rule 37(d), Federal Rules of Civil Procedure. This motion was denied.
 
 
 4
 On June 28, 1954, the last day for filing answers under the Court's order of June 16, 1954, each defendant filed a motion to dismiss the complaint on the ground the allegations thereof were not sufficient to state a claim. On January 18, 1955 defendants were granted leave to withdraw their motions to dismiss and on that date, nine and one-half months after the answers were originally due, each defendant filed an answer. On February 2, 1955 each defendant filed a motion for summary judgment which motions were granted on May 20, 1955.
 
 
 5
 Jack Marks was a resident of Clarksburg, West Virginia. Defendant Louis Markun was his nephew, and resided in Indianapolis, Indiana. On August 28, 1950 Marks executed a check for $25,000, and on November 13, 1950, another check for $25,000, each payable to the order of defendant Louis Markun, each was drawn on funds personally owned by Marks, and each check was delivered to Markun. The checks were promptly deposited by Markun in an Indianapolis bank, and were paid in due course. Markun personally endorsed the checks, and beneath his signature on each check appeared "For deposit only. Maple Road Village, Inc." The defendant Markun is the president and a director of Maple Road Village, Inc., and he, his wife and son own all of the stock of the corporation.
 
 
 6
 Jack Marks died on July 27, 1952. However, before his death there had been repaid to him by defendant Markun the sum of $10,500, consisting of two payments of $250 each, received respectively on September 29, 1950 and November 1, 1950, and twenty monthly payments of $500 each, beginning in December, 1950, and ending July, 1952. All of such payments were made by checks drawn on the account of the defendant Maple Road Village, Inc., twenty of the checks being signed by defendant Markun, and two by Markun's wife. Twenty of the checks contained on their face the notation that they were in payment of "interest."
 
 
 7
 In opposition to the motion for summary judgment, plaintiffs filed the affidavit of Marguerite Wyckoff who was the bookkeeper for Jack Marks. She disclosed that at Marks' direction she recorded in his journal or ledger the twenty-two checks received from defendant Markun as payments of interest, and that she furnished such monthly payment figures to the accountant who prepared Jack Marks' income tax returns. Miss Wyckoff also swore that in 1952, when Jack Marks was very ill and about one month before his death, defendant Markun telephoned asking that she advise Jack Marks that if he (Marks) should have need for the money, he (Markun) would arrange to repay to Marks the $50,000, or any part thereof that Marks might require. Proof was also made that in Marks' income tax returns the monthly payments from Markun were listed as "income from interest."
 
 
 8
 On this appeal plaintiffs urge as error 1) the District Court's denials of the several motions by defendants for default judgment were an abuse of discretion, and 2) the Court was in error in granting defendants' motions for summary judgment, as there were genuine issues of material facts which must be resolved.
 
 
 9
 The apparently callous disregard by defendants for the provisions of the Federal Rules of Civil Procedure pertaining to time limitations within which pleadings must be filed, would have justified the entry of a default judgment for plaintiffs. However, the Court elected to disregard the defaults. There may have been some reasons known to the Court which do not appear in the record. The defaults may have been due to the frequent change in attorneys representing the defendants, for defendants have had at least four sets of attorneys in this proceeding. It should be mentioned, however, the attorneys for defendants on this appeal were not, in any way, involved in the defaults.
 
 
 10
 Whether a default should be entered or a default judgment be set aside, is a matter resting in the sound discretion of the trial judge. Jones v. Jones, 7 Cir., 217 F.2d 239; Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242. Under the circumstances of this case, we cannot say that the District Court abused its discretion in failing to enter a default judgment.
 
 
 11
 If the pleadings, depositions and affidavits on file show there is no genuine issue as to any material fact, and that defendants are entitled to judgment as a matter of law, then the trial court was correct in entering a summary judgment for defendants. Plaintiffs insist that there were and are genuine issues as to material facts, and in any event defendants were not entitled to judgment as a matter of law.
 
 
 12
 The primary issue in this case is as to the nature of the transaction whereby Marks handed over to defendant Markun the two $25,000 checks. In arguing it was a loan, plaintiffs point out that Marks, in making entries in his books, treated the monthly payments as interest, and also that Marks paid income tax on such payments on the basis that they were payments of interest. Plaintiffs also emphasize the willingness of Markun, when Marks was ill, to pay back the entire $50,000 if Marks desired that he should do so. They also point to the fact that Markun and his wife, on February 27, 1951, executed a mortgage to Marks in the sum of $50,000. Although the recital in the mortgage that the loan was evidenced by two $25,000 notes is erroneous, the dates of the alleged notes conform almost exactly to the dates when defendant Markun received the two $25,000 checks from Jack Marks. This mortgage was released by Marks on February 18, 1952, but this release did not purport to discharge the debt, if one existed. It might be here noted that defendant Markun's explanation of the debt recitals in the mortgage is that he was in financial difficulties on February 27, 1951, and in order to protect certain realty (we assume from his creditors), he and his wife executed and recorded the mortgage purporting to secure two $25,000 notes. Markun insists, however, there never were any notes and, in fact, that he was not indebted to Marks.
 
 
 13
 Defendant Markun claims that there was a close relationship between him and his uncle Jack Marks. Markun says he received the $50,000 from his uncle under an oral agreement that he would send his uncle, then seventy-nine years old, the sum of $500 a month if he, Markun, were financially able to do so, but the total of such payments was not to exceed $50,000; that the total amount actually repaid would be subtracted from the $50,000, and such amount would be treated in Marks' will as an advance against Markun's share of Marks' estate. Markun claims the agreement further provided that if either Marks or he died, there would be no further obligation on the part of him (Markun) or his estate with reference to the $50,000. Markun insists that the transaction was, in fact, a gift of $50,000 to him. Markun claims that one of the motives for the gift was that Marks had sold his poster advertising business in West Virginia for a sum in excess of $50,000, and he did not desire that sum of money to remain in West Virginia.
 
 
 14
 At the time when Markum filed his answer, he knew of the provisions of the Marks' will. In that pleading he made no reference to the will. However, in his motion for summary judgment, Markun relied on paragraph Sixth, which reads as follows:
 
 
 15
 "Sixth: After the payment of the specific bequests hereinbefore named, and the payment of the Federal Inheritance Tax, State Transfer Tax and all other taxes and costs of administration, I give and bequeath unto my nephew, Lewis R. Markun, one-third (1/3) of said residue, from which my Executors shall deduct the sum of Fifty Thousand Dollars ($50,000.00), evidenced by two checks in the amount of Twenty-five Thousand Dollars ($25,000.00) each, due my estate from my nephew, Lewis R. Markun, together with any additional advancements made to him and evidenced by checks, which said sums so advanced are to be considered as a part of my estate."
 
 
 16
 Plaintiffs likewise rely on said paragraph Sixth of the will and point to the words used by Marks in that paragraph "* * * evidenced by two checks in the amount of Twenty-five Thousand Dollars ($25,000.00) each, due my estate from my nephew, Lewis R. Markun * * *."
 
 
 17
 Whether the $50,000 transaction was a loan or a gift may be a mixed question of law and fact. However, the intention of the parties, and the interpretation of the alleged agreement given to it by the parties, are questions of fact which, on this record, are sharply in dispute. These issues should be determined in a trial on the merits where full opportunity for cross-examination is afforded.
 
 
 18
 Defendant Markun urges that conceding arguendo the $50,000 transaction originally was a debt, the provisions of paragraph Sixth of the Marks' will changed it to an advancement. We do not know the basis of the trial court's decision as no written opinion was filed, nor was an oral opinion given. Hence, we are not informed whether the trial court gave any consideration to this contention. However, in our opinion, paragraph Sixth of the Marks' will, by itself, is not sufficient to show a change from a creditor-testator relationship to an advancement.
 
 
 19
 In this connection, we have before us defendants' motion to strike from our files an authenticated copy of a decree of the Circuit Court of Harrison County, West Virginia, construing the Sixth paragraph of the will of Jack Marks, deceased. The motion points out that this decree was not filed until after the entry of the judgment on March 26, 1955.
 
 
 20
 The will construction suit was instituted by the executors in the West Virginia court on March 30, 1954, and the motion for a construction of paragraph Sixth was made in May, 1954, shortly after the executors were advised that Markun was relying on paragraph Sixth of the will to sustain his contention. The executors had not been previously advised because, in his answer to this suit, Markun had not relied on any provision in Jack Marks' will. Because of congestion in the West Virginia court calendar, a hearing was not held until June 16, 1955. The decree was issued August 6, 1955. The transcript of the record on appeal to this Court had already been filed. We think it was proper to advise this Court of the decree and the motion to strike will be denied.
 
 
 21
 Service upon Markun in the West Virginia suit was obtained by publication pursuant to West Virginia statutes. There is no claim made here that the Court did not have jurisdiction to construe the will of Jack Marks. That Court decided the $50,000 transaction with Markun created a debt, and that the words "advancements" and "sums so advanced" were not employed in a technical sense as in the law of intestacy, but in the popular sense with a meaning equivalent to "loans."
 
 
 22
 Defendant Markun argues that he is not bound by the decree as he was not personally served. He also insists that the District Court, in applying State law, is not required to recognize unreported opinions of State nisi prius courts, citing King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed 608.
 
 
 23
 We agree that the West Virginia decree does not personally bind Louis R. Markun, but the opinion of that Court is entitled to great respect. A West Virginia will is involved, and a West Virginia court applied West Virginia law. Furthermore, the opinion in King stated, 333 U.S. 162, 68 S.Ct. 493, "* * * Nor is our decision to be taken as promulgating a general rule that federal courts need never abide by determinations of state law by state trial courts. * * *"
 
 
 24
 Inasmuch as there will be a trial on the merits we need consider only one further question. Defendant Markun's version of the $50,000 transaction is practically uncorroborated. Clearly he would be incompetent to testify as to the $50,000 transaction with Marks under the Indiana Dead Man's Statute. 2 Burns' Ind.Stats. (1946 repl.) § 2-1715.
 
 
 25
 Defendant Markun insists that this objection to his competency to testify has been waived because plaintiffs took his deposition pursuant to the discovery provisions of the Federal Rules of Civil Procedure.
 
 
 26
 The first attempt to take Markun's deposition failed because of the claim that Markun was suffering from poison ivy or perhaps heat exhaustion. When the deposition was finally taken on June 29, 1954, plaintiffs had on file three motions for default. The complaint was cast in the form of three alternative causes of action. It seemed proper for plaintiffs to ascertain what participation defendant Maple Road Village, Inc. had in the $50,000 transaction. Four letters of inquiry from the executors to Markun had been ignored. The twenty-two "interest" checks, although signed by Markun or his wife, were drawn on the account of the Maple Road Village, Inc. The discovery deposition thus taken was not offered in evidence by the plaintiffs. There was no waiver of the Dead Man's Statute unless the taking of the deposition was, in itself, a waiver.
 
 
 27
 Ignoring for the moment the question of waiver, Rule 43(a), Federal Rules of Civil Procedure[1] rules out the testimony of Markun as to the transaction with the deceased Marks, whereby he received two checks for $25,000 each. Paraphrased, the Rule would read: "The competency of a witness to testify shall be determined under the statutes of the United States or under the rules of evidence heretofore applied in the Courts of the United States on the hearing of suits in equity,[2] or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States Court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *."
 
 
 28
 The Federal statute "Competency of Witness Act"[3] was repealed by the 1948 Revision of the Code. It is, therefore, clear that the Indiana Dead Man's statute would be applicable, and by reason thereof Markun would be incompetent to testify.[4]
 
 
 29
 However, we are confronted with the question of waiver.
 
 
 30
 It is true that the taking of a deposition under Indiana law of a party who is otherwise incompetent would be a waiver. Oleska v. Kotur, 113 Ind.App. 428, 48 N.E.2d 88. But the deposition in the case at bar was taken pursuant to the Federal Rules of Civil Procedure as a matter of discovery. The actions of the defendant Markun made such an examination almost imperative. In addition, plaintiffs, at that time, assumed that they would be granted a judgment by default. Before a judgment could be entered it was necessary to determine which of the three alternative causes of action could be sustained.
 
 
 31
 The question comes down to this. Under Federal Rules of Civil Procedure, plaintiffs were entitled to conduct a discovery examination and take the deposition of defendant Markun. A proceeding by discovery was particularly appropriate in view of Markun's unwillingness to disclose to the executors the nature of the transaction involving the two $25,000 checks. Plaintiffs did not offer the deposition in evidence. There was no intentional relinquishment on their part of their right to raise the objection as to the competency of Markun to testify. We do not think that a litigant in Federal Court must either refrain from taking advantage of the Federal Rules pertaining to discovery or to proceed to do so at his peril because, under state law, in a state court proceeding, the taking of a deposition is considered a waiver.
 
 
 32
 The Federal Rules themselves indicate that a waiver should not result from the mere taking of a discovery examination. Rule 26(f) provides, in substance, that a party shall not be deemed to make a person his own witness for any purpose by taking his deposition. "* * * The purpose of the first sentence of Rule 26(f) is to make it perfectly clear that by merely taking a deposition before trial a party does not impose restrictions upon himself with respect to the deponent at the actual trial." Anderson v. Benson, D.C., 117 F.Supp. 765, 771.
 
 
 33
 We hold plaintiffs did not waive their right to object at the trial that defendant Markun was incompetent to testify as to conversations and transactions with Jack Marks, now deceased, concerning the transfer of the two $25,000 checks to him.
 
 
 34
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *. The competency of a witness to testify shall be determined in like manner."
 
 
 [2]
 "But where are these rules to be found? How vain will be the search for them has been shown, ante § 6. This part of Rule 43 seems to have little prospect of service." 1 Wigmore on Evidence, 3rd Ed. 201
 
 
 [3]
 "Competency of witnesses governed by state laws. The competency of a witness to testify in any civil action, suit, or proceeding in the courts of the United States shall be determined by the laws of the State or Territory in which the court is held." 28 U.S.C. § 631
 
 
 [4]
 "However, if state law excludes the evidence and no federal statute or rule admits it, then, the evidence must be rejected. 5 Moore's Federal Practice (2d Ed.), p. 1320, Sec. 43.04." Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 207 F.2d 899, 903