Joseph J. DULING and Charles C. Scott, Executors of the Last Will and Testament of Jack Marks, Deceased,

v.

Louis R. MARKUN and Maple Road Village, Inc., a corporation.

Civ. No. 3688.

United States District Court
S. D. Indiana,
Indianapolis Division.

May 31, 1957.

Buschmann, Krieg, DeVault & Alexander, Indianapolis, Ind., and Steptoe & Johnson, Clarksburg, W. Va., for plaintiffs.

Fansler, Fauvre, Young & Chambers, Indianapolis, Ind., for defendants.

STECKLER, Chief Judge.

This is the second time the trial court has considered the issues in this cause. On May 20, 1955, this court granted the defendants' motions for summary judgment based upon the pleadings, affidavits and deposition on file in support of the motions, concluding that there was no genuine issue as to any material fact and that the defendants were entitled to judgment as a matter of law. This conclusion was based upon the court's interpretation of paragraph Sixth of the last will and testament of the decedent, Jack Marks, as viewed in light of the pleadings, affidavits and deposition then before the court; the court having regarded the two $25,000 checks received by the defendant, Louis R. Markun, from the decedent, as being technical legal advancements as defined in probate law. Plaintiffs appealed from the ruling of this court and the Court of Appeals for the Seventh Circuit held that the defendants were not entitled to judgment as a matter of law and that this court had erred in granting summary judgment. The case was remanded for trial upon the merits. See Duling v. Markun, 7 Cir., 1956, 231 F.2d 833.

At the time this court made its ruling on the motions for summary judgment, the last will and testament of the decedent, Jack Marks, had not been construed by the Circuit Court of Harrison County, West Viginia, the court having jurisdiction of the decedent's will and his estate, the decedent having died a resident of Harrison County, State of West Virginia.

Except for such evidence and the oral evidence in the trial of this cause pertaining to the relationship existing between the defendant Louis R. Markun and the evidence concerning certain statements made by the decedent during his lifetime regarding his intentions with respect to the alleged gift in the amount of $50,000, there is little difference in the evidence before the court at this time and the record which was before the court at the time of its prior ruling. This, coupled with the holding of the Court of Appeals in regard to the admissibility of certain evidence under the Indiana Dead Man's Statute, Burns Ind.Stats. (1946 Repl.) § 2–1715, however, compels the trial court to come to a different conclusion in connection with the present proceeding.

Evidence was heard by this court on March 14, 1957, and the court having considered such evidence, together with the post-trial briefs of the parties and the proposed findings of fact and conclusions of law which were ordered filed, now makes the following findings of fact and conclusions of law:

### Findings of Fact

1. The plaintiffs in this action are the executors of the estate of Jack Marks, deceased, who died in Harrison County, West Virginia, the place of his residence, on July 27, 1952. The decedent's will was duly probated in

Harrison County, West Virginia, and the plaintiffs qualified as his executors, on July 31, 1952. The plaintiffs are residents of the City of Clarksburg, Harrison County, West Virginia. The defendant Louis R. Markun, a nephew of the decedent, is a resident of the City of Indianapolis, Indiana; and the defendant Maple Road Village, Inc., is an Indiana corporation, owned and operated by the defendant Markun and his family, Markun being the president and a director of the corporation. The amount in controversy in this action is in excess of $3,000, exclusive of interest and costs. This court has jurisdiction of the action.

2. The controversy in this action rose out of a $50,000 transaction between the decedent, Jack Marks, and the defendants which took place in the latter part of the year 1950, and involved two checks for $25,000 each sent by Jack Marks to the defendant Markun. In their three alternative causes of action pleaded in the complaint, the plaintiffs assert the right to recover the unpaid balance of the $50,000, with accrued interest, from the defendants, or from at least one of them, on the ground that, in the light of the surrounding facts and circumstances, and the conduct of the parties, the $50,-000 transaction constituted and was a loan of money to the defendants, thereby giving rise to an interest bearing debt owing to Jack Marks.

The defendants' version of the $50,000 transaction is stated in paragraphs 4 and 5 of the answer of the defendant Louis R. Markun filed in this action. Such answer alleges that the $50,000, evidenced by the two $25,000 checks mentioned, was paid to the defendant Louis R. Markun by Jack Marks, not as an outright or unconditional gift or advancement, but subject to a verbal agreement between the decedent and the defendant Markun for a somewhat involved repayment arrangement, the nature of which is outlined in the above mentioned paragraphs of Markun's answer.

3. Around the end of August, 1950, Jack Marks sent to the defendant Markun a check for $25,000, dated August 28, 1950, payable to the order of Markun. Markun immediately endorsed this check over to the defendant, Maple Road Village, Inc., and, as shown by an endorsement stamped on the back of the check, it was deposited in an Indianapolis bank on September 2, 1950. Thus, the check was received by Markun in Indianapolis some time between August 28 and September 2, 1950.

4. A little over two months later, Jack Marks sent to the defendant Markun a second check for $25,000, dated November 13, 1950, which Markun handled in the same way that he did the original one. He immediately endorsed the check over to the defendant Maple Road Village, Inc., and as shown by an endorsement on the back of the check, it was deposited in an Indianapolis bank on November 17, 1950. Thus, this check was received by Markun in Indianapolis some time between November 13 and November 17, 1950.

5. Following the delivery of these two $25,000 checks by Jack Marks to the defendant Markun, and the deposit and payment thereof, twenty-two regular monthly payments on the $50,000 transaction were made to Jack Marks. These twenty-two monthly payments, aggregating the sum of $10,500, were made to the decedent by checks drawn upon the account of the defendant Maple Road Village, Inc., in an Indianapolis bank.

Photostatic copies of these checks of the defendant corporation were filed in evidence at the trial. Twenty of the checks were signed by the defendant Louis R. Markun, and the other two by his wife Mildred Markun. All of the twenty-two checks, with the exception of two, have entries thereon noting that the checks are in payment of "interest"; and as the other two checks are for the same monthly amounts, it may be fairly inferred that they also covered "interest." These monthly payments of "interest" were made regularly to Jack Marks by checks of the defendant Maple Road Village, Inc., until his death in July, 1952.

6. At the direction of Jack Marks, his bookkeeper, Miss Wyckoff, entered

monthly in the regular course of business, in a formal journal or ledger in which personal business transactions of Jack Marks were recorded, the series of twenty-two monthly checks of the defendant Maple Road Village, Inc., as being in payment of "interest." Such "interest" payments were recorded by her on a page of the journal or ledger bearing the heading "Maple Road Village, Inc., (50,000.00) Louis R. Markun."

7. At Jack Marks' direction, his bookkeeper turned over to Mrs. Campbell, the public accountant who made out his income tax returns, the list of interest payments on the $50,000 transaction recorded in the decedent's journal or ledger book. This public accountant prepared Jack Marks' income tax returns for the calendar years covered by all of these interest payments—i. e., 1950, 1951 and 1952. In the 1950 return, the $1,000 "interest" received by the decedent from the defendant Maple Road Village, Inc., in that year was reported as "interest received"; and on the 1951 return, the $6,000 of "interest" received from the defendant corporation by Jack Marks in that year was reported as "interest received." Jack Marks signed the 1950 and 1951 returns, containing such entries, in Mrs. Campbell's presence, and they were then filed with the Internal Revenue Bureau for those years, and taxes paid thereon. As Jack Marks died during the year 1952, his 1952 return was not prepared until after his death.

8. Shortly after the defendants had received the second $25,000 check from Jack Marks in November, 1950, the defendant Louis R. Markun on February 27, 1951, executed a mortgage upon certain of his real estate in Marion County, Indiana, which mortgage was duly recorded in that county. The mortgage secured an indebtedness of $50,000 described as being owed by the defendant Markun to Jack Marks. In this mortgage, the debt secured thereby was described as follows:

"* * * two promissory notes of Twenty-five Thousand ($25,000.-00) Dollars each, said notes bearing interest at the rate of six (6%) per cent per annum, and the first note being dated September 1, 1950, and the second note being dated November 16, 1950, with attorney's fees, said notes being executed by said mortgagors, Louis R. Markun and Mildred Markun, and payable to the order of the mortgagee, Jack Marks.

\* \* \* \* \* \*

"The said mortgagors expressly agree to pay all the sums of money secured, or to be secured, by this mortgage, without relief from valuation or appraisement laws, with six (6%) per cent interest after maturity * * *."

The two $25,000 "notes" referred to in this mortgage conform almost precisely to the two $25,000 checks involved in the present action. The mortgage describes the "first note" as being dated September 1, 1950; this conforms to the date of receipt of the first $25,000 check dated August 28, 1950, which was deposited in an Indianapolis bank on September 2, 1950, so it must have been received by the defendant Markun on or about September 1, 1950. Likewise, the mortgage recites a "second note" dated November 16, 1950, and this conforms to the date of receipt of the second $25,000 check by the defendant Markun, since the check was dated November 13, 1950, and was deposited in an Indianapolis bank on November 17, 1950.

This mortgage was later released by a release dated February 18, 1952, and recorded a few days thereafter; but while this released the lien on Markun's real estate described in the mortgage, it did not discharge the indebtedness recited therein. And it is undisputed that following the execution and recordation of this release, the monthly payments of "interest" to Jack Marks by the checks of the defendant Maple Road Village, Inc., continued on as before, and were never discontinued until Jack Marks' death in July, 1952.

9. Jack Marks died on July 27, 1952. He left a will which had been executed by him on January 22, 1952, and which

was duly probated in Harrison County, West Virginia, the county of his residence, on July 31, 1952.

The following reference to his $50,000 transaction with the defendant Markun is contained in paragraph Sixth of the Jack Marks will:

"Sixth: After the payment of the specific bequests hereinbefore named, and the payment of the Federal Inheritance Tax, State Transfer Tax and all other taxes and costs of administration, I give and bequeath unto my nephew, Lewis R. Markun, one-third (⅓) of said residue, from which my Executors shall deduct the sum of Fifty Thousand Dollars ($50,000.00), evidenced by two checks in the amount of Twenty-five Thousand Dollars ($25,000.00) each, due my estate from my nephew, Lewis R. Markun, together with any additional advancements made to him and evidenced by checks, which said sums so advanced are to be considered as a part of my estate."

In an appropriate proceeding for the construction and interpretation of the above-quoted paragraph of the Jack Marks' will, the Circuit Court of Harrison County, West Virginia, the court having jurisdiction of the will, found that the language employed by the testator in paragraph Sixth described the $50,000 transaction as a debt, and not as a gift or advancement to the defendant Markun, and that there was nothing in the testator's language in the will which would convert such a debt into either a gift or advancement. The following excerpts are quoted from the West Virginia Court's decree of August 6, 1955, construing paragraph Sixth of the will:

"1. That in his books and records, and by his actions, the decedent Jack Marks, from the inception of the $50,000.00 transaction with the defendant Louis R. Markun in 1950, and continuing up until the time of his death in July, 1952, and including the time of the execution of his will in January, 1952, treated the $50,000.00 transaction as an in-terest bearing debt to be repaid to him, and not as a gift or advancement to the defendant Louis R. Markun. In paragraph Sixth of his will, Jack Marks referred to the $50,000.00, evidenced by the two $25,000.00 checks, as being 'due my estate from my nephew, Louis R. Markun'; and he directed that the $50,000.00 was to be 'considered as a part of my estate.'

"2. That the words 'advancements' and 'sums so advanced' as they appear in Paragraph Sixth of the will, were not there employed or intended in their technical legal sense in the law of intestacy, but in the popular sense with an intended meaning equivalent to the word 'loans.'

\*　\*　\*　\*　\*　\*

"\*　\*　\* And the Court further finds that there is nothing in the provisions of Paragraph Sixth of the will of Jack Marks which converts such interest bearing debt into an advancement or gift for the benefit of the defendant Markun. On the contrary, as already mentioned, the language of Paragraph Sixth describes the transaction as a debt owing to the testator's estate.

"4. That the provisions of Paragraph Sixth of the will should be and are construed and interpreted by this Court as describing the $50,000.00 theretofore received by the defendant Louis R. Markun from the testator Jack Marks by two $25,000.00 checks as being a debt to be repaid to the Jack Marks estate and not as describing the $50,000.00, or any balance outstanding thereon, as, or converting it into, an advancement or gift for the benefit of the defendant Louis R. Markun."

10. Following the testator's death on July 27, 1952, Jack Marks' gross estate was appraised at a total of about $114,000. At the time of the trial, all of the assets of the estate (other than the claim of the Executors against the defendants involved in the present ac-

tion), had been fully liquidated, and the Executors realized thereon the gross amount of around $167,000, so that the $50,000 transaction involved in the present action obviously constituted a very considerable part of the decedent's fortune (i. e., about one-fourth) at the time he sent the two $25,000 checks to the defendant Markun.

11. After the death of Jack Marks on July 27, 1952, and the qualification of the Executors on July 31, 1952, no further payments on the $50,000 transaction were ever made by either of the defendants. Following their qualification, the Executors endeavored, over the course of more than a year, through a series of four letters written to the defendant Markun, to ascertain what his position or contention with respect to the transaction might be. These four letters were as follows:

(a) A letter dated December 16, 1952, from which the following is quoted:

"As Executors of the Jack Marks Estate, we ask you to advise if you are now ready to pay over to us the balance of the $50,000.00 paid you by Jack Marks in 1950, after crediting thereon whatever sum you may be entitled to by reason of the repayments totalling $10,500.00 mentioned above. If for any reason you should contend that the balance of the $50,-000.00 still outstanding and unpaid does not constitute a debt due and payable from you to the Jack Marks Estate, we call upon you now to advise us just what your position is regarding the $50,000.00 transaction, and to explain why the outstanding balance is not owing by you to the Estate.

"We have already endeavored to ascertain your position on this transaction from your local counsel, Mr. John S. Stump, Jr., but he does not appear to be authorized by you as yet to state definitely what your position or contention may be. Accordingly, we are writing this letter direct to you, and request that we may have a reply from you

promptly. Mr. Stump is being provided with a copy of this letter."

(b) A letter dated March 3, 1953 containing the following:

"Thus far, we have had no reply to our inquiry. We feel we are entitled to know what your position or contention is with respect to this transaction, and again request that you advise us on the subject.

"A copy of this letter is being sent to Mr. Stump."

(c) A letter dated October 27, 1953, from which the following is quoted:

" * * * You have not replied to either of our letters, nor has Mr. Stump, your local attorney, been able to tell us just what your position or contention on the $50,000.00 transaction may be."

(d) A letter dated December 21, 1953, in which the Executors said the following:

"So far as we are advised, you have thus far never disputed that the unpaid portion of the $50,000.00 is a debt owing by you to the Jack Marks' Estate. Accordingly, as Executors of the Jack Marks' Estate, we now demand that you immediately pay us the above-mentioned balance, together with accrued interest to date.

*    *    *    *    *    *

"A copy of this letter is being sent to your local attorney, Mr. John S. Stump."

The final letter of December 21, 1953, was sent to the defendant Markun by registered mail, and the registered return receipt produced at the trial showed that it was duly received by Markun. In fact, the defendant Markun, in his testimony, admitted that he received at least three of the four letters, but was unable to identify which one of the letters he claimed not to have received. Copies of all four letters were sent to the defendants' Clarksburg, West Virginia, attorney, John S. Stump.

No response, either written or verbal, to these communications was ever re-

ceived by the executors either from the defendants, or their West Virginia attorney. The defendants ignored the letters. Their conduct in this respect is the more noteworthy because the evidence showed that the defendant Markun was personally acquainted with Mr. Duling, one of the executors, and had done business with Duling's bank at Clarksburg prior to the death of Jack Marks.

12. At the trial, the defendants did not produce, or offer to produce, any of their books or records which might reasonably be expected to show how the two $25,000 checks were recorded on the books of the defendants, or at least in the books of the defendant corporation, at the time such checks were received and deposited, and before the controversy in this action arose. There was no showing that such books were unavailable. On the contrary, at an early stage of this case, the defendants secured from this court on June 16, 1954, an extension of time for the filing of their answers, after the plaintiffs had requested the clerk to enter a default judgment against the defendants because of their failure to answer the complaint, upon the following ground as stated in the written motion then filed by the defendants:

"And, in support of said motion respectfully shows that in order for the defendants to properly answer plaintiffs' complaint it is necessary to make a complete examination of the defendants' books and records and that such examination cannot be completed before the said 28th day of June, 1954."

13. The evidence shows that up to the time of his death, the decedent Jack Marks treated the $50,000 transaction as giving rise to an interest bearing debt. Likewise, in his last will and testament, executed in January, 1952, Jack Marks described the $50,000 in paragraph Sixth of his will, as construed and interpreted by the West Virginia Court, as being a debt "due my estate from my nephew Lewis R. Markun."

14. Until after the death of Jack Marks, the defendants both treated the $50,000 transaction as giving rise to an interest bearing debt owing to Jack Marks. This is borne out by the series of twenty-two "interest" payments made to Jack Marks monthly by checks of the defendant Maple Road Village, Inc., all but two of which were signed by the defendant Markun; and by the recognition of such indebtedness contained in the Indianapolis mortgage executed and recorded by the defendant Markun in February, 1951. The conduct of both defendants after the death of Jack Marks, in ignoring the series of letters written by the executors, is a further indication of their consciousness that the transaction here in issue was a loan, rather than a gift or advancement.

15. The monthly payments of interest made to Jack Marks by the checks of the defendant corporation would amount to 12% interest on the amount of money which was received from Jack Marks from the two $25,000 checks. Such an unusual rate of interest somewhat supports the defendants' position that the two $25,000 checks were not received in the form of a loan, but on the contrary, represented a gift or an advancement to the defendant, Markun. In view of the relationship existing between the decedent, Marks, and the defendant, Markun, they could very well have chosen not to follow the usual and customary business standards ordinarily adhered to in similar transactions. However their writings when made said one thing, but now the defendants would have the court find that their writings had no such meaning at all. The defendants' dilemma has been brought about by their own inconsistency. But even all of this, coupled with the testimony of the witnesses appearing on behalf of the defendants regarding the decedent's verbal statements with reference to his disposition of the proceeds from the sale of his poster advertising company, does not overcome the written evidence as shown by the exhibits now before the court, and particu-

larly since the court feels bound to follow the judicial interpretation of the decedent's will as made by the state court having jurisdiction of the will.

In respect to the matter of interest, the plaintiff executors are asking for only 6% interest on the $50,000, that being the legal rate in West Virginia. Upon applying the twenty-two monthly payments to Jack Marks aggregating $10,500, first to the payment of 6% interest, and crediting the remainder on principal, it appears that the total amount of unpaid principal and interest on the $50,000, computed to March 14, 1957, the date of the trial, would be $56,-934.45.

### Conclusions of Law

From the foregoing facts the court concludes:

1. That this court has jurisdiction over the parties and the subject matter in this cause of action.

2. The $50,000 transaction involved in this action, evidenced by the two $25,-000 checks hereinabove described, which took place between Jack Marks and the defendants in the latter part of the year 1950 was, and was intended by the parties to be, a loan of such money by Jack Marks to the defendants Louis R. Markun and Maple Road Village, Inc., to be repaid by them with interest; and that it was not, and was not intended by the parties to be, a gift to the defendants, or either of them, or an advancement to the defendant, Markun, in a technical legal sense as defined in probate law.

3. The plaintiffs are entitled to recover from the defendants Louis R. Markun and Maple Road Village, Inc., upon the loan and debt created by the $50,000 transaction, the balance of the principal unpaid thereon at the time of the death of Jack Marks, after giving the defendants appropriate credit for the aggregate payments of $10,500 made thereon prior to the decedent's death, together with accrued interest at 6% to the date of judgment.

4. The plaintiffs are entitled to judgment against the defendants, and each of them, in this action for the sum of $56,-934.45, the total amount due and owing from defendants as of March 14, 1957, the date of trial, plus 6% interest on the balance of the unpaid principal thereafter to date of judgment, together with the costs of this action.

Let judgment be entered accordingly.